TANZER, J.
Both sides have petitioned for reconsideration and it is appropriate to note two of the contentions of the State Land Board which were not dealt with in the opinion.
First, the Board argues that the estoppel principles which we held limit the Board’s power to revoke the riparian license to erect navigational structures should not operate in favor of the plaintiff port districts and against the state. The Board argues that the policy reasons underlying application of the doctrine in favor of private parties against the state are inapplicable to public bodies such as the port districts. We are referred to no cases which deal with estoppel in favor of an inferior governmental body and against the state and we are aware of none.
It is appropriate in this case to give the benefit of estoppel arising from exercised affirmative licenses to all plaintiffs in this case alike, without regard to the public nature of some of them. Although they are creatures of the state, the port districts are nevertheless entities distinct from the state. They are supported by a distinct tax base and they serve a distinct constituency. Accordingly, they are protected against taking by the state without compensation, see Anno., Condemnation — Of Public Entity’s Land, 35 ALR3d 1293, 1307 (1971), and in dicta, P & W.V.RR. Co. v. City of Portland, 14 Or 188, 193, 12 P 265, 58 Am R 299 (1886), and for similar reasons are entitled to the protection of the doctrine of estoppel in this setting. Under its lease program, the Board seeks to deal with the port districts as a proprietor with tenants in the same commercial relationship as with the private plaintiffs. It is therefore equitable that the owners of the districts, i.e., the taxpayers, should be accorded the same relief as the owners of the private company plaintiffs.
The Board also points out that prior to 1968 the state operated a lease program similar in some ways to *[494] the one now contemplated and that some of the plaintiffs in this action were lessees under that program at least since 1940. This fact may affect the cutoff period from which recoupment must run as to such plaintiffs and it may therefore be relevant in computing their appropriate period of free rental. It does not, however, affect the applicability of the estoppel principle. Indeed, the fact that the former lease programs were terminated upon the advice of the Attorney General, 34 Op Atty Gen 370 (OR 1968), reinforces the affirmative nature of the license for structures built in the interim.
Petitions for reconsideration denied.